IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JEREMY HERRICK SIMON                                   PLAINTIFF

v.                      Civil No. 16-5185

FORMER SHERIFF KELLY CRADDUCK;
TRANSPORT DEPUTY GARRET; and
NURSE TYRANNY RAY                                DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff under 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*.

Plaintiff is incarcerated in the Varner Unit of the Arkansas Department of Correction (ADC). The claims that are the subject of this case arose when Plaintiff was incarcerated in the Benton County Detention Center (BCDC). Plaintiff contends he was denied timely and appropriate medical care for sudden blindness in his left eye.

Defendants Sheriff Cradduck and Deputy Garret filed a summary judgment motion (Doc. 28). Defendant Nurse Ray also filed a summary judgment motion (Doc. 25). A hearing was held on March 6, 2017, to allow Plaintiff to testify in response to the summary judgment motion. Plaintiff appeared by video.

After the hearing, a subpoena was issued for Plaintiff's ADC medical records (Doc. 37). The records were obtained and filed under seal (Doc. 39). The summary judgment motions are now ready for decision.

### 1. Background

Plaintiff was booked into the BCDC on March 9, 2016. *Ray Ex.* 1. He testified that all his life he had horrible eye sight but was still able to see with the aid of corrective lenses. Plaintiff testified that for the last twenty-seven years he had been wearing contact lenses instead of glasses. He indicated the contact lenses were better for his eyes as they reshape the curve of the eye. He had been told by several opthamologists that surgery was not an option for him.

Plaintiff testified that without corrective lenses he could not see out of his left eye. Plaintiff indicated that beginning three days prior to his incarceration he had been experiencing flashes of light in his left eye. *Ray Ex.* 2 at 52. It was not painful. He later learned that the flashes of light occurred when blood vessels at the back of his eye were bursting.

Plaintiff testified he told the nurses about the flashes of light and one thought it was due to his use of methamphetamine. Plaintiff testified that on Friday, March 11, 2016, he rolled over and opened his eyes and could not see anything from his left eye. Plaintiff testified he immediately started pressing the call button. The deputies responded and indicated Plaintiff would need to be seen by the nurse.

Plaintiff testified that it took the nurse several hours to come to the pod "because they have a lot of people with false complaints." *Ray Ex.* 2 at 25. Plaintiff described his symptoms as brilliant bursts of light and loss of vision. *Id.* at 24.

Plaintiff was transported by Deputy Garret to Mercy Hospital Northwest Arkansas for evaluation. *Ray Exs.* 1 at ¶ 3, 1-d & 2 at 25. He was seen and evaluated by Aaron Randall Poteat, P.A. *Id.* Plaintiff testified the on call ophthalmologist was contacted. Plaintiff's diagnosis was subjective visual disturbance, left eye. *Id.* Plaintiff was discharged with

instructions to follow up with Vold Vision . . . call in three days." *Ray Exs.* 1 & 1-e. The discharge instructions also indicated that Dr. Vold wanted to see the Plaintiff on Monday, March 14, 2016. *Id.*

The instructions were conflicting as to which Vold Vision office was to be contacted. One entry stated to ask for the Bentonville office, while another entry said to call the Springdale office. *Ray Exs.* 1 & 1-e. Nurse Ray is a licensed practical nurse (LPN) employed by Southern Health Partners, Inc., the contract medical carrier for the BCDC. *Ray Ex.* 1 at ¶¶ 2-3. When Nurse Ray called for an appointment on Monday, March 14, 2016, she was given an appointment for March 21, 2016. *Ray Exs.* 1 & 3-a.

On March 21, 2016, Plaintiff was seen by Dr. McFarland in the Vold Vision office in Bentonville. *Ray Ex.* 3-a. Plaintiff had not experienced any change in his vision between March 11, 2016, and March 21, 2016. *Ray Ex.* 2 at 36.

Plaintiff testified Dr. McFarland concluded the Plaintiff needed immediate surgery. Plaintiff was taken to Fayetteville to see Dr. Vold. Plaintiff testified it was determined that he had blood on his optic nerve. He was told by Dr. Vold and a doctor at the University of Arkansas for Medical Science (UAMS) that his condition was caused by the growth of tiny blood vessels in the back of his eye--neovascularization.[1] *See also Ray Exs.* 3-b & 4. Dr. Vold also informed the Plaintiff that he suffered from myopic degeneration.[2]

---

[1] Neovascularization is the "proliferation of blood vessels in tissue not normally containing them, or proliferation of blood vessels of a different kind than usual in tissue." http://www.medilexicon.com/dictionary/59132 (accessed June 15, 2017).

[2] Myopic degeneration is defined as an "association of crescent of the optic disc, atrophy of the choroid and macular pigment, subretinal neovascularization, hemorrhage, and pigment proliferation in pathologic myopia." http://www.medilexicon.com/dictionary/23318 (accessed June 15, 2017). Myopia is defined as "[t]hat optic condition in which only rays from a finite distance from the eye focus on the retina." http://www.medilexicon.com/dictionary/58533 (accessed June 15, 2017).

Dr. Vold treated Plaintiff's retinal neovascularization by injecting 1.25 mg of Avastin into the eye. *Ray Ex.* 3-f. Plaintiff testified that the injections slow the growth of the blood vessels and reduce swelling.

He received additional ocular injections of Avastin on May 4, 2016, June 13, 2016, August 15, 2016, and September 26, 2016. *Ray Exs.* 3-g to 3-r.  The injections made his eyesight a little "brighter."  Plaintiff testified, however, that his eye sight was "no where near what it should be."  Plaintiff testified that a doctor at the UAMS said his vision would never return to what it was before this happened.

Plaintiff testified his claim against the Defendants is based on their delay in taking him to an ophthalmologist. Plaintiff testified he did not know if it would have made a difference to his eye sight if he was taken to an ophthalmologist sooner. *See also Ray Ex.* 2 at 53. Plaintiff further testified that Dr. Vold said he did not know if seeing the Plaintiff sooner would have hurt or helped the situation.  Plaintiff indicated that he had no evidence that the delay caused any further damage to his left eye. *Id.*

Plaintiff additionally testified there was nothing in the ADC records to show that it would have made a difference if he was taken to an opthamologist more quickly.  In fact, Plaintiff stated he received better medical care at the BCDC than he is receiving at the ADC.

Plaintiff testified that Deputy Garret should have relayed to the nurse the order for him to be seen at Vold Vision on Monday, March 14, 2016.  Plaintiff indicated he did not actually know if Deputy Garret failed to advise nursing staff about the hospital's orders. However, he felt that if Deputy Garret had conveyed the orders, he would have been taken to Vold Vision on Monday, March 14, 2016.

-4-

When they returned to the jail after the trip to the emergency room, Plaintiff observed Deputy Garret pull the nurse aside and have what looked like a heated discussion with her. Plaintiff testified he felt that Deputy Garret was saying that Plaintiff should have been sent to an eye doctor and not the emergency room. However, Plaintiff indicated he did not hear what the conversation between Deputy Garret and the nurse was about. *See also Ray Ex.* 2 at 36. Plaintiff testified that Deputy Garret may have just been upset about having had to work a sixteen hour shift.

Plaintiff admitted it was possible that Deputy Garret conveyed to the nurse that Plaintiff was to see the eye doctor the following Monday. Plaintiff also assumed that Deputy Garret gave the hospital paperwork to the nurse. Plaintiff testified Deputy Garret only did transport and did not provide medical care. Plaintiff stated that for Deputy Garret to take him to an eye doctor on Monday there would have to be a transport order. Deputy Garret was not the officer who took the Plaintiff to the eye doctor on March 21, 2016.

Plaintiff testified that with respect to Sheriff Cradduck, he should be held liable because he was the "boss." Plaintiff indicated he saw Sheriff Cradduck once or twice but when he tried to talk to him, he was told to turn around and shut up. Plaintiff testified that he did not believe a policy or custom of Benton County was the moving force behind the violation of his constitutional rights.

Plaintiff testified that while he was at the BCDC, he received bills from Vold Vision. He was told the bills were his responsibility since he had experienced eye problems all his life. He said "they" would not even submit the bills to Medicaid.

### 2. Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." <u>National Bank of Commerce v. Dow Chemical Co.</u>, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." <u>National Bank</u>, 165 F.3d at 607 (<u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." <u>Id.</u> (<u>citing, Metge v. Baehler</u>, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. <u>West v. Atkins</u>, 487 U.S. 42 (1988); <u>Dunham v. Wadley</u>, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for

deprivation of a constitutional right under § 1983. Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986).

### (A). Denial of Medical Care in General

To prevail on a denial of medical care claim, the Plaintiff must show: (1) the existence of an objectively serious medical need, and (2) that Defendants knew of and deliberately disregarded that need. Vaughn v. Gray, 557 F.3d 904, 908-09 (8th Cir. 2009). Defendants' mental state must be akin to criminal recklessness. Id. This standard is not met by the exercise of professional judgment in refusing to implement an inmate's requested course of treatment. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (constitutional violation cannot rest on mere disagreement with treatment decisions); Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (inmates have no constitutional right to particular course of treatment, and doctors are free to use their own medical judgment); Logan v. Clarke, 119 F.3d 647, 649-50 (8th Cir. 1997) (prison doctors not deliberately indifferent where they treated the prisoner and offered sensible medication). Similarly, "[m]erely demonstrating that a prison [nurse] committed medical malpractice is insufficient to establish deliberate indifference." Jackson v. Buckman, 756 F.3d 1060, 1065-66 (8th Cir. 2014) (citations omitted). To constitute deliberate indifference, "[a]n inmate must demonstrate that a prison [nurse's] actions were so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Id. at 1066 (internal quotation marks and citation omitted).

### (B). Summary Judgment Motion of Sheriff Cradduck and Deputy Garret

Sheriff Cradduck and Deputy Garret move for summary judgment on the following grounds: (1) there is no proof of personal involvement by Sheriff Cradduck; (2) there is no

constitutional injury caused by Deputy Garret; (3) negligence is not a constitutional violation; (4) Defendants are entitled to qualified immunity; and (5) there is no basis for official capacity liability.

Plaintiff's claim against Sheriff Cradduck is based on his being in charge of the jail and responsible for his employees. *See Cradduck Ex.* B at 41. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. See Monell v. Department of Social Services, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994); see also Whitson v. Stone County Jail, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendant, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) (quoting Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006)); Keeper v. King, 130 F.3d at 1314 (no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); Mark v. Nix, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility).

There are no allegations that Sheriff Cradduck was involved in any way with the decision of whether the Plaintiff should receive medical treatment, the type of medication he should be prescribed, what tests should be ordered, or whether he should be referred to a specialist. *Cradduck Ex.* B at 41-42. Sheriff Cradduck is entitled to summary judgment on the individual capacity claim.

Next, Plaintiff's claim against Deputy Garret is based on his alleged failure to communicate forcefully to jail medical staff that Plaintiff was to be seen by Dr. Vold on Monday. *See Cradduck Ex.* B at 35. Even if we assume Deputy Garret did not communicate with jail medical staff at all about the hospital discharge directions, medical staff had the discharge directions in writing. Further, it was jail medical staff and not Deputy Garret who made the follow-up appointment. Deputy Garret did not make any decisions regarding Plaintiff's medical care and was not personally responsible for any alleged delay in the provision of care. Deputy Garret is entitled to summary judgment on the individual capacity claim.

Having found that the facts do not make out a constitutional violation, Defendants are entitled to qualified immunity. See, e.g., Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

Finally, Defendants argue that Plaintiff has failed to point to any unconstitutional county policy or custom. I agree. An official capacity claim "is functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claim is treated as a claim against Benton County. See Murray v. Lene, 595 F.3d 868, 873 (8th Cir. 2010).

AO72A
(Rev. 8/82)

"A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right." Alexander v. Hedback, 718 F.3d 762, 766 (8th Cir. 2013)(citations omitted). "A governmental policy involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy." Brockinton v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007) (internal quotations and citations omitted). A "custom involves a pattern of persistent and widespread . . . practices which become so permanent and well settled as to have the effect and force of law." Id.

"[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). "Moreover, the plaintiff must show not only that a policy or custom existed, and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional." Luckert v. Dodge County, 684 F.3d 808, 820 (8th Cir. 2012) (internal quotation marks and citation omitted).

Here, Plaintiff makes no such showing. There is no basis on which Benton County may be held liable.

**(C). Summary Judgment Motion of Nurse Ray**

Nurse Ray moves for summary judgment arguing there is no evidence suggesting she was deliberately indifferent to Plaintiff's serious medical needs. I agree. There is no evidence suggesting the delay in scheduling Plaintiff's appointment was the fault of Nurse Ray as opposed to personnel at Vold Vision. Even assuming that Nurse Ray was responsible for the delay, she is still entitled to summary judgment in her favor because there is absolutely no evidence

suggesting the delay had any adverse impact on the Plaintiff's vision. "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis.'" Holden v. Hirner, 663 F.3d 336, 342 (8th Cir. 2011) (quoting Reece v. Groose, 60 F.3d 487, 491 (8th Cir. 1995)).

Nurse Ray is entitled to summary judgment in her individual capacity. Here, Plaintiff's own testimony was that he did not know if seeing Dr. Vold sooner would have made a difference to his eye sight. Further, Dr. Vold himself indicated he did not know if seeing the Plaintiff sooner would have made a difference.

Once again, having found that the facts do not make out a constitutional violation, Nurse Ray is also entitled to qualified immunity. See, e.g., Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

An Opinion and Order has already been entered dismissing any official capacity claim against her. Doc. 31.

### 4. Conclusion

For the reasons stated, I recommend that: (1) the motion for summary judgment filed by Sheriff Cradduck and Deputy Garret (Doc. 28) be **GRANTED**; and (2) the motion for summary judgment (Doc. 25) filed by Nurse Ray be **GRANTED**. This case should be **DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file**

-11-

**timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 6th day of July 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)